Keating, J.
This case presents for our consideration an attack upon the constitutionality of the procedural and substantive provisions of the Narcotic Control Act of 1966 as they relate to the compulsory treatment of addicts who have neither been charged nor convicted of criminal activity.
Pursuant to section 206 (subd. 2, par. a) of the Mental Hygiene Law “ [a]ny person with whom an alleged addict may reside or at whose house he may be, or the husband or wife, father or mother, brother or sister, or the child or the nearest relative available, or anyone who believes that a person is a narcotic addict, or a person believing himself to be a narcotic addict, may apply for an order certifying such person to the care and custody of the [Narcotic Addiction Control] commission [for rehabilitative care and treatment for up to three years], by presenting a verified petition [to a Justice of the Supreme Court or a Judge of the County Court], setting forth knowledge, information or belief that such person is a narcotic addict, together with a statement of the facts upon which such knowledge, information or belief is based. ’ ’
The statute goes on to provide that, upon presentation of the petition, the Judge or Justice to whom it is presented may question under oath the petitioner or any witness to determine whether there are “ reasonable grounds ” to believe that the person in whose behalf the petition is made is an addict. If the court believes that such reasonable grounds are present, it shall issue an order directing the addict “ (i) to appear at a specified time and place and undergo a medical examination, and (ii) to appear before the judge or justice * * * not * * * more than five days after the date of such *549 examination ”. (Mental Hygiene Law, § 206, subd. 2, par. b.)
The statute also provides that, if there are reasonable grounds to believe that the alleged addict would not comply with the order, the court may issue a warrant directing that the person named be taken into custody, deposited with the commission for examination and, following such examination, be brought before the court.
The statute requires that, upon the conclusion of the medical examination, the commission personnel conducting the examination must transmit a copy of their report to the Judge or Justice who ordered the examination. If, after reviewing the report, the Judge or Justice finds that there is reasonable ground to believe that the person examined is a narcotic addict, he must advise the person of this finding, give him a copy of the petition and report and explain that, if he is found to be an addict, he may be certified to the care and custody of the commission for an indefinite period not exceeding three years. The court must also advise the alleged addict that he is entitled to a hearing at which he may have the assistance of counsel and that, if he is unable to afford an attorney, the court will appoint one for him.
If, after holding a hearing pursuant to a request, the Judge finds the person to be an addict, he must grant an order certifying the person to the care and custody of the commission for an indeterminate term of up to three years.
The addict may, within 30 days after the order of certification, apply to a Justice of the Supreme Court — other than the Justice who made the order — “ for a review of such order The Justice receiving such application <£ shall thereupon cause a jury to be summoned and shall proceed to try the question of the narcotic addiction ” (Mental Hygiene Law, § 206, subd. 7).
Shortly after the Narcotic Control Act became effective, Mrs. Anna James appeared at the Supreme Court (New York County) and alleged in a petition that her son Paul had admitted to her that he used heroin regularly, that he had needle marks on his body and that she believed that he was 1 ‘ dependent upon opium, heroin, morphine, or a derivitive or synthetic drug of that group ”.
The petition also alleged that she believed that her son would not voluntarily comply with an order of the court to report for *550 a medical examination and a hearing on the issue of addiction. The basis of her belief was the prior refusal of her son to have any medical treatment and the fact that he had beaten her up in the past for failing to provide him with money for drugs and that he might do so again.
Upon this affidavit, a Justice of the Supreme Court issued an order for the arrest of Paul James who was picked up and deposited at a facility operated by the Narcotic Addiction Control Commission. There he underwent a 20-minute examination and was detained three days prior to being brought before the court. The examining physician concluded that James was an addict and so reported to the court. The court advised James of his rights pursuant to the statutory provisions enumerated earlier, and James requested a hearing. The hearing was held some 10 days later, and James was certified to be an addict by a Justice of the Supreme Court. Within 30 days thereafter, James sought a jury trial as provided by subdivision 7 of section 206. A trial was held, and the jury found him to be an addict.
The Supreme Court (Trial Term), following the verdict, ordered James released from custody upon the ground 1 ‘ that the procedure mandated by section 206 of the Mental Hygiene Law for the compulsory apprehension and detention of James, an alleged narcotic addict, on an ex parte application, whether by order or warrant, is clearly in violation of his constitutional rights.” (54 Misc 2d 514, 538-539.) The Appellate Division (one Justice dissenting and one Justice concurring in result) reversed the order of the Supreme Court. The appellant appeals to this court from the order of the Appellate Division.
On this appeal appellant argues, first, that the provisions requiring compulsory commitment are unconstitutional for the reason that they authorize the commitment of a person, who has not been convicted of any crime, without a showing that he is dangerous to himself or others or that he has lost his self-control so as to be in need of institutional confinement.
This argument might have some merit if the construction placed upon the statute by the appellant is correct. The statute defines an addict as “ a person who is at the time of examination dependent upon opium, heroin, morphine or any derivative or synthetic drug of that group or who by reason of the repeated *551 use of any such drug is in imminent danger of becoming dependent upon * * * [it] ”.
The appellant in the instant case was found to be dependent on narcotics. Persons ‘ ‘ dependent upon ’ ’ narcotic drugs, as the language and purpose of the statute make clear, are persons who, through the repeated use of narcotic drugs, have developed so great a physical and/or emotional dependence that they are no longer able to control craving for narcotics.[1] It is persons such as these who “ are * * * responsible for one-half the crimes committed in the city of New York ”, who pose a “ threat to .the peace and safety of the inhabitants of the state ” and who by their addiction endanger their own “ physical and mental health ” (Mental Hygiene Law, § 200). And it is these persons whom the Legislature may compel to undergo rehabilitative care (Robinson v. California, 370 U. S. 660; Matter of DeLaO, 59 Cal. 2d 128; People v. Victor, 62 Cal. 2d 280). We believe that .the statute, as so construed, is a valid and legitimate exercise of the police power.
Although we conclude that the State may compel those addicted to narcotic drugs to undergo rehabilitative care at a State institution under a properly restricted statute, there are several additional questions regarding the constitutionality of the proceedings which ultimately terminate in a commitment. The appellant urges that “ the procedure authorized by section 206 of the Mental Hygiene Law deprived [him] of due process of law
At the outset it should be noted that all of the appellant’s objections to the procedural provisions for the ex parte detention of an alleged addict for a physical examination have been obviated, as to future cases, by a recent amendment to section 206 of the Mental Hygiene Law (L. 1968, ch. 772). The amended statute provides that, before being required to undergo such an examination, the alleged addict must be given a hearing to determine ‘ ‘ whether there are reasonable grounds to order him to undergo a medical examination ’ ’.
*552 The statute also provides that where, as in the instant case, there are reasonable grounds to believe that the alleged addict would not voluntarily respond to an order requiring him to appear before the court, the Judge may issue an order authorizing a peace officer to take him into custody and bring him 11 forthwith ’ ’ before the court. If the court is not in session, the alleged addict may be held at a designated facility of the commission until such time as the court is in session. “ In such case the director or head of the facility * * * shall advise the alleged addict of the nature of the proceeding, the reason for his detention, and that he will appear before a judge at the next court session in connection with the allegation that he is a narcotic addict. Such person shall also inform the alleged addict that he has the right to the aid of counsel at every stage of the proceedings, and that if he desires the aid of counsel and is financially unable to obtain counsel, counsel shall be assigned by the court, and that he is entitled to communicate free of charge, by telephone or letter, in order to obtain counsel and in order to inform a relative or friend of the proceeding ” (Mental Hygiene Law, § 206, subd. 2, par. c, as amd. by L. 1968, ch. 772).
The Attorney-General argues that, while such an amendment was desirable, it was not mandated by the due process clause of the Constitution, and in this case the appellant’s rights were not violated. We cannot agree.
The Fourteenth Amendment to the Constitution of the United States provides that no person shall be deprived of liberty without due process of law. The detention of this appellant, who ' was charged with no crime, against his will for a period of three days, without notice of the nature of the proceeding and an opportunity to contest the finding upon which the determination to restrain his liberty was predicated, is contrary to our most fundamental notions of fairness and constitutes a deprivation of liberty without due process of law. (Cf. Speelit v. Patterson, 386 U. S. 605; People v. Bailey, 21 N Y 2d 588.) [2] As we *553 indicated in Matter of Coates (9 N Y 2d 242, 249), in discussing the temporary detention of mentally ill persons for observation without notice and a hearing, such action may be justified only 1 ‘ where immediate action is necessary for the protection of society and for the welfare of the alleged mentally ill In the instant case the three-day detention of the appellant, without notice and an opportunity to be heard, was neither necessary nor required for the protection of society or the welfare of the appellant. The Attorney-General argues that: ‘ ‘ The Legislative findings * * * concerning the dangers of addiction * * * amply justify such a temporary detention. These findings stressed both the ‘ threat to the peace and safety of the inhabitants of the state ’ and the urgent necessity of compulsory treatment to promote ‘ the health and welfare of the inhabitants of the state. ’ ”
Whatever justification the legislative findings may provide for the ultimate commitment of narcotic addicts for treatment, or even for temporary detention following a preliminary hearing, they provide no basis for detention in a State institution —• albeit for ‘ ‘ only ’ ’ three days but which could have been as much as five days — of a person merely suspected of being an addict without giving that person an opportunity to be heard. If any further refutation of this argument were necessary, it is provided by the very amendments to the Mental Hygiene Law discussed above.
Having concluded that the temporary detention of the appellant violated his constitutional rights, it must necessarily follow that the subsequent determination that the appellant was an addict, which was based almost entirely on information obtained during the period of illegal detention, must be set aside. Where we deal with violations of rights that are so fundamental and intrusions on individual freedom that are so unwarranted, we cannot, as the Attorney-General asks us, uphold the subsequent finding of addiction even though the appellant eventually received a hearing. The finding, resting as it does on evidence obtained during the unconstitutional detention of the appellant, cannot stand.
To summarize, then, we hold that the State may compel an individual to submit to rehabilitative confinement. We hold, however, that provisions of section 206 of the Mental Hygiene *554 Law as they affect the proceedings leading up to confinement are unconstitutional, and it is this constitutional' infirmity which requires a reversal here.
The order of the Appellate Division should be reversed and the judgment of the Supreme Court reinstated.
Chief Judge Fuld and Judges Burke, Bbeitel and Jasen concur; Judges Scileppi and Bergan dissent and vote to affirm on the prevailing opinion at the Appellate Division.
Order reversed, without costs, and judgment of Supreme Court, New York County, reinstated.

. The alternative status for commitment under the statute — persons who through repeated use of narcotic drugs are in imminent danger of becoming dependent upon the drug — refers to persons who have yet not reached but are in imminent danger of reaching the stage where they will be unable to control their craving for narcotic drugs.

. The Supreme Court of California has recently held that a person suspected of being a mentally disordered sex offender could not, consonant with due process, be temporarily committed to a State institution without a hearing to determine whether in fact there were sufficient grounds to warrant such temporary confinement (People v. Succop, 67 Cal. 2d 785; see, also, People v. McDonald, 257 Cal. App. 2d 846).