Michael **FHAGEN**, on behalf of himself and all others similarly situated, Plaintiff,

v.

Alan D. **MILLER**, M.D., as Commissioner of Mental Hygiene of the State of New York, and Alexander Thomas, M.D., as Director of the Psychiatric Division, Bellevue Hospital Center, Defendants.

**No. 69 Civ. 3218.**

United States District Court
S. D. New York.

Dec. 4, 1969.

Bruce J. Ennis ℅ New York Civil Liberties Union, New York City, for plaintiff.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendant Miller; Samuel A. Hirshowitz, First Asst. Atty. Gen., Brenda Soloff, Asst. Atty. Gen., of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendant Thomas; Judith Gordon, Asst. Corp. Counsel, of counsel.

EDWARD WEINFELD, District Judge.

This action was commenced by plaintiff on behalf of himself and others sim-

ilarly situated to declare sections 78 and 72 of the Mental Hygiene Law of the State of New York, McKinney's Consol. Laws, c. 27, which governs admission of alleged mentally ill persons to hospitals for immediate observation, to be violative of plaintiff's right to due process and the equal protection of the laws under the Federal Constitution. Plaintiff moves for the convening of a three-judge court and for a preliminary and permanent injunction restraining the defendants, state officials, from enforcing the alleged unconstitutional laws.

Section 78 deals with emergency admissions to hospitals for up to thirty days upon allegations made by a lay person; section 72, with initial admission on the certificate of two physicians. Section 78(1) provides that state-approved hospitals may receive or retain for thirty days a person "alleged to be in need of immediate observation, care or treatment for mental illness." It further provides that if at any time after such admission the patient or anyone on his behalf gives written notice of the patient's desire for release, or if the hospital director determines that additional care and treatment beyond the thirty-day period is necessary and the patient does not acquiesce, an application accompanied by the certificate of two examining physicians must be made pursuant to section 72. The application must be filed within ten days after the giving of the notice or before the expiration of the thirty-day period. The retention of the patient is then subject to all the safeguards and procedures of section 72.

Section 72 establishes the "two physician" or "medical admission" procedure. A patient may be received or retained in a hospital if alleged to be "mentally ill and suitable for care and treatment" upon the certificate of two examining physicians accompanied by an application for the admission by one of various classes of individuals, including the patient's nearest relative, a friend or a public welfare officer. The patient must then be examined "forthwith" at the receiving hospital by a staff physician (other than the two certifying physicians) and if found in need of care and treatment may be admitted. Within five days after admission, the patient must be given written notice of the application and of his right to demand a judicial hearing on the question of the need for further hospitalization. Written notice must also be given to the patient's nearest relative other than the one who signed the application, or as many as three additional persons if the patient so requests in writing, and to the Mental Health Information Service. If the patient, the Mental Health Information Service, or someone in the patient's behalf, requests in writing a hearing at any time prior to sixty days after admission,[1] a hearing must be scheduled by a court not later than five days from the receipt of that request. The court may then hear testimony and examine the person alleged to be mentally ill. If the court determines the patient to be mentally ill, it may order him retained for treatment for a period not to exceed six months.

Section 74 provides for judicial review of such commitment orders if demanded within thirty days. Such review is in the Supreme Court of the state, with a right to a jury trial. If the verdict is that the person is not mentally ill, he must be discharged forthwith. If it is determined that he is mentally ill, an order authorizing continued retention is entered and the patient may pursue normal appellate remedies.

Finally, under section 88, the Mental Health Information Service, referred to above, was established in each judicial department of the Supreme Court. This Service is charged with the responsibili-

---

1. If no request is made within the first 60 days, the hospital must still petition the court if it desires to continue the commitment beyond that period. The court must hold a hearing if one is requested, or else may proceed *ex parte*. Additional court orders are required after 1 year and every subsequent 2 years. N.Y. Mental Hygiene Law § 73 (McKinney Supp.1969).

ty to study and review the admission and reports of involuntary patients and to inform them and others interested in the patient's welfare of the admission and retention procedures, and of the patient's rights to have a judicial hearing and review, to be represented by legal counsel and to seek independent medical opinion. The Service, after examining the patient's file, may on its own initiative demand a hearing pursuant to section 72 even if the patient, his family or friends do not. In any proceeding before a court the Service is required to provide the court with all relevant information concerning the patient's case, his hospitalization and his right to discharge. The Service is directly notified by the hospital of the involuntary admission of all patients except those admitted under section 78(1).[2]

A threshold question is presented by the defendants' motion to dismiss the complaint upon the ground that plaintiff is not presently a patient in a mental hospital and he does not allege any immediate possibility of his being placed in such a hospital. Accordingly, they contend that no justiciable controversy exists between the parties and that plaintiff fails to state a claim for equitable relief requiring the convening of a statutory three-judge court.[3]

Plaintiff was twice admitted to Bellevue Hospital pursuant to section 78, and his further confinement beyond thirty days was effected by invoking the provisions of section 72, the "two physician procedure." Plaintiff was also involuntarily confined for periods of three and six months in 1962 and 1963 under other commitment procedures.

Plaintiff's last commitment under section 78 occurred in April of this year. On May 7 the basis of his detention was changed from section 78 to section 72

status upon the two physician certificate and application required thereunder. On May 21 habeas corpus and section 72 review proceedings were instituted in the state courts challenging the constitutionality of plaintiff's confinement under sections 78 and 72. Plaintiff asserts, and it is not denied, that the proceedings were twice adjourned over his objection; that during their pendency he was discharged on June 12, with the result that his habeas corpus and review petitions were rendered moot and consequently were withdrawn. Plaintiff asserts that, in all, he was confined for almost seven weeks without ever being accorded a judicial hearing; that even after he had filed his written request for release he was detained for over three weeks without a hearing. Plaintiff, although not presently confined, alleges he is under "constant apprehension" of renewed commitment under section 78 or 72.

■ In the light of plaintiff's prior four commitments, the last as recent as June 1969, and the frustration of his attempt then to test the constitutional validity of his confinement, it cannot be said that his "apprehension" of another commitment is unfounded. The state's answer that he fails to allege that a renewed commitment is an immediate possibility is, in view of his medical history, quite unrealistic. A new section 78 "emergency" or "lay" admission of petitioner may be put into motion by any person if an authorized hospital accepts him. Plaintiff can hardly be expected to anticipate when that provision will again be invoked. To require plaintiff to wait until he is confined anew before he could again test the Act with the prospect of another thwarted proceeding, as occurred previously, is to subject him to a futile revolving door process.[4]

---

2. N.Y. Mental Hygiene Law § 70(7) (McKinney Supp.1969).

3. *See* Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Ex parte* Poresky,

290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

4. Defendants' reliance on Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed. 2d 113 (1969); *see* United Pub. Work-

In addition, any statutory challenge to confinement under section 78 automatically brings into play the two physician commitment under section 72. The issue of the validity of a patient's confinement is then limited and tested by the section 72 standard of "mentally ill and suitable for care and treatment." Thus, no effective review of the initial section 78(1) admission and confinement procedure is available.[5] Accordingly, plaintiff does present here a justiciable controversy and a proper formal claim for equitable relief.[6]

Plaintiff's principal attack is centered upon section 78. Under that section an admission of an alleged mentally ill person may be effected upon the petition of a layman. Where an approved hospital accepts the allegedly ill person, no court order or judicial review is provided for prior to hospitalization; nor is judicial review provided after hospitalization. The patient can obtain statutory judicial review only after conversion to a section 72 status. And even if a patient forthwith seeks his immediate release from a section 78 hospitalization, thereby bringing into play the section 72 medical commitment procedure, he can, under a strict timetable of the giving of required notices under both sections,[7] be

ers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), is thus misplaced. Here, unlike *Zwickler*, there is a substantial controversy of "immediacy and reality," Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941), since plaintiff is threatened with a deprivation of liberty through the repetition of actions of others entirely outside of his control. *Cf.* Evers v. Dwyer, 358 U.S. 202, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958) (per curiam). *See also* Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed. 2d 1 (1969); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (plurality opinion of Frankfurter, J.); *id.* at 522–539, 81 S.Ct. 1752 (Harlan, J., dissenting); Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

5. While habeas corpus would be available to test the validity of the initial confinement under section 78, *see* N.Y. Mental Hygiene Law § 426 (McKinney Supp. 1969), plaintiff's own prior experience demonstates that the short period of confinement under section 78 may in practice make this an illusory remedy. In any event, plaintiff's apprehension of another confinement under that section is not lessened by the availability of a writ once he is confined.

6. Plaintiff alleges that the suit is also brought on behalf of persons (1) previously committed under sections 72 or 78, not now in custody, but under constant apprehension of renewed commitment; (2) involuntarily confined at present under section 78(1); and (3) in-voluntarily confined at present under section 72 after having been converted from section 78(1) status. Since this court finds that plaintiff individually has standing to maintain this suit, it need not now rule on the appropriateness of treating the litigation as a class action. *See* Hall v. Lefkowitz, 305 F.Supp. 1030 (S.D. N.Y.1969).

7. Pursuant to section 78(2), an application for medical commitment under section 72 must be filed within 10 days after the giving of notice by the patient or someone in his behalf. Thus, if such notice is filed immediately upon admission, the application must be filed by the 11th day. Thereafter, the patient must be given notice of his rights no later than 5 days after the foregoing section 72 application is filed. That would be on the 16th day. If the patient immediately files a written request for a hearing and that application is forwarded to a court on the same day, a hearing must be scheduled no later than the 21st day (5 days from the day the court receives the application). Of course, the hospital may act more promptly, but it is not required to do so, and may well wait the maximum time if it feels immediate treatment may benefit the patient sufficiently that he could be released within the relevant 5 or 10 day period without further formal proceedings. And the patient, assuming he knows of his rights, might act under section 72 before being given the required notice, which might be delayed 5 days. But the time period might also be extended if, for example, the section 72 application for a hearing is not promptly forwarded by the hospital to the court.

confined for a minimum period of twenty-one days before a test of the validity of his detention may be had.

■ The state, however, justifies the emergency procedure in terms of the protection of both the public and the allegedly ill person. Undoubtedly a forthwith commitment and temporary detention of allegedly mentally ill persons for observation without prior notice and hearing, where "immediate action is necessary for the protection of society and for the welfare of the allegedly mentally ill," is constitutionally permissible, providing an adequate means is made available to test the cause and reasonableness of the detention.[8] The state insists that section 78 is an innovative plan that preserves the interest of the state and the allegedly mentally ill person confined thereunder by replacing cumbersome judicial processes in the first instance with rapid and humane treatment based upon expert medical judgments. Perhaps, but the beneficent purposes of the Act, however well-intentioned, are not at issue.[9] The question is whether a procedure which permits a twenty-one day confinement without judicial review infringes upon an alleged mentally incompetent's right to due process of law guaranteed him under the Fourteenth Amendment. This involves issues of the adequacy and reasonableness of notice to the confined person or to others in his behalf, the right to a reasonably prompt hearing as to the validity of his detention, the reasonableness of the period of temporary detention until a hearing is had, and the availability of judicial or other adequate review.[10]

■ While the court obviously makes no determination of this and other tendered constitutional issues, it is one of substance which cannot be said to be foreclosed by controlling Supreme Court authorities.[11] It is true that habeas corpus is always available to test the lawfulness of detention. But this assumes a patient has knowledge or has been advised of his right to so proceed. In any event, not only is "the presumption that the confined person knows the law * * * highly unrealistic,"[12] but if the statute is constitutionally defective, it will not be saved by the Great Writ. Nor is it saved by an express recognition in the state's Mental Hygiene Law of a patient's right to the writ.[13] The statute adds nothing to his constitutional right to avail himself of it.

The motion for a statutory three-judge court is granted.

8. *In re* Coates, 9 N.Y.2d 242, 249, 213 N.Y.S.2d 74, 79, 173 N.E.2d 797, *appeal dismissed*, 368 U.S. 34, 82 S.Ct. 147, 7 L.Ed.2d 91 (1961).

9. *Cf. In re* Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

10. *See In re* James, 22 N.Y.2d 545, 293 N.Y.S.2d 531, 240 N.E.2d 29 (1968); *cf.* Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

11. *See Ex parte* Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

12. *In re* Coates, 9 N.Y.2d 242, 252, 213 N.Y.S.2d 74, 81, 173 N.E.2d 797, 814, *appeal dismissed*, 368 U.S. 34, 82 S.Ct. 147, 7 L.Ed.2d 91 (1961).

13. N.Y. Mental Hygiene Law § 426 (McKinney Supp.1969).