Francis J. Bloustein, J.
Pursuant to CPLR 3001, plaintiffs challenge the constitutionality of a number of sections of the New York Mental Hygiene Law, principally sections 72 .and 78, plus 14 NYCRR 62.2, and request declaratory, injunctive and other relief. Upon this proceeding, by motion and cross motion, each of the parties seeks summary judgment.
In July, 1969, plaintiff Fhagen brought a Federal action (iS. D. N. Y.) against defendants Miller .and Thomas, raising •essentially the same constitutional objections to the Mental Hygiene Law, as herein raised. On December 4, 1969, the Hon. Edward Weinfeld ruled that plaintiff Fhagen’s complaint raised substantial constitutional questions and ordered the convening of a three-Judge court to hear and determine the merits of the action (Fhagen v. Miller, 306 F. Supp. 634 [S. D. N. Y., 1969]). Thereafter, plaintiff Winters moved to intervene as a plaintiff in the pending action. On April 20, 1970, the three-Judge Federal court (Kaufman, C. J., Weinfeld, D. J. and Palmieri, D. J.) determined to retain jurisdiction but to withhold consideration of the constitutional issues presented until the New York State courts had an opportunity to construe the scope and meaning of the challenged provisions of the Mental Hygiene Law (Fhagen v. Miller, 69 Civ. 3218, S. D. N. Y.). On June *165 22, 1970 the present proceeding was commenced and issue was fully joined on July 24, 1970.
Plaintiffs’ principal attack is directed to section 78 of the Mental Hygiene Law, which deals with emergency involuntary admissions to hospitals of alleged mentally ill persons upon the application of a lay person. Subdivision 1 of section 78 provides that State-approved hospitals may receive or retain for 30 days any person ‘ ‘ alleged to be in need of immediate observation, care or treatment for mental illness ’ ’. It further provides that if, at any time after admission, the patient or anyone on his behalf gives written notice of the patient’s desire for release, or if the hospital director determines that additional care and treatment beyond the 30-day period is necessary and the patient does not consent thereto, an application for a judicial hearing accompanied by the certificate of two examining physicians must be made pursuant to section 72. The application must be filed within 10 days after the giving of the notice or before the expiration of the 30-day period.
Subdivision 2 of section 78 provides that once the application is filed, the admission and retention of the patient “ shall be subject to all of the provisions for notice, hearing, review and judicial approval of retention or transfer and continued retention, as provided in sections [72, 73 and 74] ”.
Subdivision 3 of section 78 authorizes any peace officer to take into custody any person “ who appears to be mentally ill and is conducting himself in a manner which in a sane person would be disorderly ” and to remove him to any State-approved hospital for immediate observation, care or treatment.
Subdivision 4 of section 78 provides for the apprehension and hospitalization of alleged mentally ill persons, pursuant to judicial warrant, which entails, of course, the appearance of the person before a magistrate prior to hospitalization.
Section 72 establishes the so-called “two physician” or “medical admission” procedure for involuntary commitment. A person may be received or retained in a hospital if alleged to be “ mentally ill and suitable for care and treatment ’5 upon the certificate of two examining physicians accompanied by an application for admission executed within 10 days prior to such admission by one of various classes of individuals, including the patient’s nearest relative, a friend, a public welfare officer, community service officer, or a director of a community mental health service. The patient must be examined “ f orthwith ” at the receiving hospital by a staff physician and “ if such person is found to be in need of care and treatment ’ he may be admitted. Within five days after admission, the patient must *166 be given written notice of the application and of his right to demand a judicial hearing on the question of the need for further hospitalization. Written notice must also be given to the patient’s nearest relative other than the one who signed the application, or to three additional persons designated by the patient in writing, and to the Mental Health Information Service [ef. Mental Hygiene Law, § 88]. If the patient, or anyone on his behalf, requests in writing a hearing at any time prior to 60 days after admission, a hearing must be scheduled by a court not later than 5 days from the receipt of that request. The court may then hear testimony and examine the patient. If the court determines the patient to be mentally ill, it may order him retained for treatment for a period not to exceed six months.
Section 74, referred to above, provides for judicial review of commitment orders, with the right of trial by jury. Thereafter, the patient may pursue normal appellate remedies.
The plaintiff Fhagen was twice committed to Bellevue Hospital pursuant to section 78 of the Mental Hygiene Law, and his further confinement beyond 30 days was effected by invoking the “two physician” procedure of section 72 of the Mental Hygiene Law. Fhagen was also involuntarily confined for periods of three and six months in 1962 and 1963 under other commitment procedures. Fhagen’s last commitment, under subdivision 1 of section 78, occurred on April 28, 1969. On May 7, 1969, the basis for his commitment was changed from section 78 to subdivision 1 of section 72, the two physicians’ certificates and accompanying application being executed while he was confined and receiving treatment under subdivision 1 of section 78. On May 21, 1969 habeas corpus and section 72 review proceedings were instituted, challenging the constitutionality of his confinement under sections 78 and 72. The proceedings were twice adjourned, over plaintiff’s objection, and, in the interim, he was discharged from Bellevue on June 12, 1969. On June 17, 1969 both the section 72 review petition and the habeas corpus petition were withdrawn.
Plaintiff Fhagen alleges that, notwithstanding the fact that ■he is presently at liberty, he is under “ constant apprehension ” of renewed commitment under sections 78 or 72. This same allegation was made in the Federal court action and was held to form a sufficient basis for .standing to sue. (“ Plaintiff does present here a justiciable controversy and a proper formal claim for equitable relief.” Fhagen v. Miller, 306 F. Supp. 634, 637.)
*167 Plaintiff Winters also bases her standing upon a “ constant apprehension ’ ’ of renewed commitment. She, however, presents a history cf only one prior commitment, pursuant to section 78, in 1968. She was admitted involuntarily to Bellevue-Hospital on May 2, 1968, after being forcibly removed from her hotel room by police officers, acting at the request of the hotel management. On May 7, 1968, the basis for her commitment was changed from subdivision 1 of section 78 to subdivision 1 of section 72, the physicians’ certificates and accompanying affidavit having been executed during her emergency confinement under section 78. On May 13, 1968, plaintiff Winters was discharged from Bellevue and immediately transferred to Central Islip State Hospital. She alleges that she was there advised that unless she agreed to remain as a voluntary patient she would be held involuntarily for a minimum of six months. She so agreed and her status was converted to < c voluntary 5 ’ on June 18,1968. She was discharged one month later and remains at liberty. She asserts that at no time during her confinement was she ever advised of her right to request judicial review of the necessity for her hospitalization.
In the instant action, defendants have not renewed their objection to plaintiffs’ standing, save with respect to section 72. While this court tends to view the claim of ‘1 constant apprehension ” of recommitment as a most tenuous basis for any standing to sue herein, the court will not, sua sponte, raise the question of standing, in view of the Federal court’s determination and defendants’ evident desire to try the case on the merits. With respect to 'Section 72, however, defendants ’ standing objection has merit and is sustained. Neither plaintiff has ever been initially admitted pursuant to section 72 and presents no reasonable basis for claiming “apprehension” that they will suffer such fate. Even though plaintiffs will not be heard to challenge section 72, per se, it is evident that their challenge to section 78 necessarily involves a consideration of section 72 procedures to the extent that these are incorporated in, and employed under, section 78 procedures.
Subsequent to the institution of the afore-ihéntioned Federal court action, but prior to the decision of the three-Judge court (retaining jurisdiction pending the outcome of State court litigation), the State Commissioner of Mental Hygiene promulgated certain regulations with respect to section 78 to provide additional .safeguards for prospective patients (see 14 NYCRR 62.2). The new regulation provides that no patient is to be retained under section 78 for more than 15 days; that a person brought to an approved hospital for admission pursuant to *168 section 78 shall be “ forthwith examined by a staff physician ” after which “ the patient may be admitted ” if found to be in need of immediate observation, care and treatment; that the Mental Health Information Service is to be notified promptly of the admission; that the patient is to be notified promptly (i.e., within 24 hours of admission to a ward) in writing (1) that he has a right to demand his release at any time, and, if not released, the right to receive a judicial hearing at his request on the question of need for hospitalization, (2) that the Mental Health Information Service has been notified of his admission and is available to him, (3) that he may, at any time, on his own request or anyone on his behalf, communicate with the Mental Health Information Service and avail himself of its facilities, and (4) that he may communicate once by telephone or the “ next most expeditious method ” with any person in the State. If the hospital director is unwilling to release the patient upon demand, such demand .shall be treated as a request for a habeas corpus proceeding pursuant to .section 426 of the Mental Hygiene Law and the director ■shall ‘ ‘ forthwith ’ ’ notify the appropriate court and the Mental Health Information Service of this habeas corpus hearing demand. This hearing in no way abrogates the obligation of the hospital to proceed with the filing of a two-physician certificate as required by subdivision 2 of section 78. If it is determined that the patient requires further hospitalization, this ‘ ‘ two-physician ’ ’ procedure must be ' effected within the shortened period of 15 days.
Plaintiffs concede that the new regulation appears to eliminate a number of objections originally raised with respect to the operation of section 78, but they question whether it is within the power of the Commissioner of Mental Hygiene to promulgate such regulation, which alters the statutory scheme of subdivisions 1 and 2 of section 78 of the Mental Hygiene Law. While the challenged regulation modifies somewhat the procedures obtaining under section 78, it does not appear to be fatally inconsistent with the statute, and the court finds that the regulation is a legitimate exercise of the Commissioner’s statutory authority and is, therefore, valid. (See Mental Hygiene Law, § 7, subd. 5; § 9, subd. 3; §§ 11 and 12.)
Plaintiffs argue, in any event, that the new regulation does not resolve all constitutional problems raised by the statute, and contend that the statute can only be constitutionally preserved if judicially construed in the manner recited in their complaint. This court does find that the .statute requires clarify *169 ing judicial construction in certain areas, but not necessarily the construction urged by plaintiffs.
One critical deficiency in the statute is the absence of clear admission .standards for emergency involuntary admissions. As noted, subdivision 1 of section 78 (as modified by 14 NYCRB. 62.2) authorizes the admission of an individual if it is medically determined that he is “ in need of immediate observation, care or treatment for mental illness.” (This is to be contrasted with the .standard for nonemergency involuntary admissions under section 72, requiring the written opinion of two examining physicians that the prospective patient is “mentally ill and suitable for care and treatment.”) The term “ mental illness ” is substantially defined under subdivision 8 of section 2 of the Mental Hygiene Law, which defines a “mentally ill person ” as “ a person afflicted with mental disease to such an extent that for his own welfare or the welfare of others, or of the community, he requires care and treatment ”.
Nowhere in the statute, however, is found any express formulation of the standard for determining that a mentally ill person is in need of ‘ ‘ immediate observation, care and treatment.s ’ Plaintiffs argue that section 78, which authorizes temporary confinement of an individual without prior notice or hearing, must be held to contravene the requirements of due process unless the sole standard for determining 11 immediacy ’ ’ of care be that the patient constitute an immediate physical threat to himself or society. They argue that the prospective patient must be found to be “ dangerous,” as that term is understood at common law, i.e., keyed to physical violence. More pointedly, plaintiffs urge a rule that no person shall be considered imminently dangerous to himself or others unless there are reasonable grounds to believe that, if not immediately restrained, he would probably commit suicide or inflict substantial physical injury on other persons.
It .is clear from an analysis of the Mental Hygiene Law that the Legislature never intended such a limited, rigid standard for determining the need for emergency involuntary admissions. Thus, subdivision 3 of section 78 authorizes the apprehension and transmission to an approved mental hospital of any person “who appears to be mentally ill and is conducting himself in a manner which in a sane person would be disorderly ”. The category of “ dangerously mentally ill ” is recognized to be a class distinct from the general class of mentally ill persons and special provisions relating to this class have been provided by the Legislature. Section 85 of the Mental Hygiene Law defines the “ dangerously mentally ill ” patient as one who “ has com *170 mitted or is liable to commit an act or acts which if committed by a sane person would constitute homicide or felonious assault ” or whose presence in a regular mental hospital is “ dangerous to the safety of other patients therein, the officers or employees thereof, or to the community”. This section prescribes the procedure, medical and judicial, for removing .such patients to a maximum security facility (Matteawan State Hospital). Section 74 of the Mental Hygiene Law affords to “ any person aggrieved” the right — not otherwise available — to challenge a decision to release a mentally ill person, in those cases where said person is “ proved to be dangerous to himself or others ” (see, also, Mental Hygiene Law, § 76, limiting the authorization for involuntary admissions solely on the certificate of certain community mental health officials to cases where the prospective patient is deemed to be “ dangerous to himself or others ”).
It has been definitively held that due process is not offended by a temporary confinement, without prior notice or hearing, where immediate action is necessary for the protection of society and for the welfare of the allegedly mentally ill person (Matter of Coates, 9 N Y 2d 242, app. dsmd. 368 U. S. 34; Matter of James, 22 N Y 2d 545, 552-553). “ The protection of society ” would appear to encompass more than prevention of murder and mayhem, and would reasonably include the traditionally recognized function of government to preserve public order, public health and public sensibilities. Thus, for example, if the allegedly mentally ill person is engaging in conduct which, if committed by a sane person, would constitute disorderly conduct, criminal nuisance, public lewdness, or sexual abuse of a minor, the State’s legitimate interest in protecting society would warrant that person’s temporary confinement as surely as if the individual was engaging in conduct amounting to felonious assault or homicide. Accordingly, the court deems it unwise and unnecessary to limit the basis for emergency involuntary admission under section 78 of .the Mental Hygiene Law to “ dangerous ” conduct. An adequate workable standard is that suggested in Matter of Coates {supra), namely that such admission procedure is authorized where it is found that immediate action is necessary for the protection of society and the welfare of the allegedly mentally ill person.
Plaintiffs’ challenge to the standard for admission under .section 72 is also rejected, as the same applies in a conversion of status proceeding under subdivision 2 of section 78. Under the new procedures directed by 14 NYCEB 62.2, a patient admitted as an emergency case is not converted to section 72 status until *171 a judicial hearing is held on the question of the need for retention and further treatment, with the burden of proof thereat being upon the hospital director. Given the protection of a prior judicial hearing, a mentally ill person who requires care and treatment for his own welfare, and that of the community, but will not seek it, may be required to yield to the State’s interest as parens patrice and involuntarily undergo the treatment necessary to restore him to mental health.
Plaintiffs’ second principal objection to section 78 is that it does not adequately provide for a hearing on the question of the necessity for, and propriety of, the emergency admission. Although subdivision 2 of section 78 provides that, upon application for conversion to section 72 status, “ the admission and retention of any such patient shall be subject to all of the provisions for notice, hearing, review and judicial approval of retention”, it is not seriously questioned that the hearing on conversion to section 72 status concerns itself principally with the patient’s need for continued treatment, not with the justification for employment of emergency admission procedures. Moreover, it has been adequately demonstrated that the time frame within which the conversion hearing may be held often precludes a seasonable, meaningful review of the emergency question, per se. However, section 426 of the Mental Hygiene Law does afford the patient a means for seasonably testing his emergency admission by way of “ habeas corpus ” proceeding. The Federal court opined that, because of plaintiff Fhagen’s experience (i.e., adjournment of the habeas corpus hearing over the objection of his counsel), this may be an £i illusory remedy ” (see Fhagen v. Miller, supra, p. 637, n. 5). This court does not share that opinion. The remedy is real and its possible misapplication in one instance is no basis for finding it constitutionally insufficient. It will be noted, moreover, that an adjournment was granted on Fhagen’s case because his application presented not merely a challenge to the legal and medical validity of his individual involuntary admission, but a full-blown challenge to the constitutionality of the law. Indeed, this challenge was found by the Federal court to be so .substantial as to warrant the convocation of a three-Judge Federal Bench. The application was an exceptional one and the resulting adjournment to enable defendants to marshall a defense of the entire statutory scheme was at least understandable. In any event, the Commissioner’s new regulation (14 NYCBB 62.2) treats any request for release, after emergency, involuntary admission as an automatic habeas corpus application and mandates that the hospital director proceed ££ forthwith ” to perfect such *172 application for judicial review. As a consequence, this review remedy is now anything but illusory.
Defendants acknowledge that the scope of inquiry upon the habeas corpus proceeding includes the patient’s mental condition as of the date of his admission and consideration of the need for, and propriety of, the use of emergency admission procedures. Of course, the new regulation makes it clear that the right to a habeas corpus hearing is “in addition to ” the right to a hearing under subdivision 2 of section 78, which latter will continue to concern itself principally with the need for continued confinement for care and treatment.
Defendants agree with plaintiffs’ contention that the burden of proof at said hearings is on the director of the hospital with custody of the patient, to establish that the patient met and meets the statutory standards for involuntary admission and retention. However, defendants oppose plaintiffs’ contention that the standard of proof upon said hearing be that imposed by the criminal law, i.e., proof beyond a reasonable doubt. The authorities cited by plaintiffs for their contention are not persuasive. The challenged statutory provisions are part of a sweeping change made in this State’s Mental Hygiene Law after extensive investigation and exhaustive study and research by the members of the legal and medical professions and other public groups. As the three-judge Federal Bench observed, “ The new law, the product of these studies, sought to achieve a balanced approach to the interests of the individual and the community in the administration, treatment and hospitalization of the mentally ill; it also was keyed to due process requirements and designed to provide a more meaningful judicial review than was available under the prior law.” (Fhagen v. Miller, supra.) One of the more enlightened objectives was to insure the individual his due process of law while removing the aura (and stigma) of criminality obtaining in commitment proceedings under former law. (Cf. Robinson v. California, 370 U. S. 660, 666.) The object of hospitalization is different from the object of incarceration as the result of crime and the •standard should be no more than the civil standard to determine the need for hospitalization so that treatment can properly begin (see People v. Fuller, 24 N Y 2d 292, 304; Matter of James, 22 N Y 2d 545, supra). Plaintiffs’ citation of Matter of Gault (387 17. S. 1) is particularly inappropriate in this regard. Even where the precipitating cause for apprehension and temporary confinement -is conduct which, if committed by a sane man, would be deemed criminal, the Mental Hygiene Law (as modified by 14 NYCRB, 62.2) affords the individual a full *173 panoply of due process protections denied to Master Gault. Moreover, it is not, nor can it be, claimed that the title “ hospital ”, given to our regular mental institutions, is a mere euphemism for penal or correctional institutions.
Plaintiffs next urge the court to construe the “disorderly conduct ” standard of subdivision. 3 of section 78 to have a meaning coextensive with that given to the same term in section 240.20 of the Penal Law. (Both plaintiffs were delivered to institutions by peace officers, pursuant to this subdivision.) Since this provision is addressed to peace officers, it is reasonable to conclude that the phrase ‘ ‘ disorderly conduct ’ ’ was intended to have the same meaning given it by section 240.20 of the Penal Law. (That does not mean, however, that justification for admission pursuant to subdivision 3 of section 78 is dependent upon proof beyond a reasonable doubt of guilt of the violation cf disorderly conduct.)
Plaintiffs also advance the contention that the statute should be read so as to require defendants to explore the possibilities of employing less drastic alternatives to full-time hospitalization, and that full-time hospitalization should be prohibited if less drastic alternatives would suffice. Defendants assert that, within the limits of available time, personnel and facilities, they and the Mental Health Information Service, do attempt to explore the possibilities of alternative care (plaintiff Fhagen himself was released from confinement to receive outpatient treatment, although he, rather than the hospital, initiated that action); but facilities are not always equal to the need. At any rate, plaintiffs’ contention as to alternative courses of treatment, however meritorious it may be, does not state a constitutional claim (cf. Lake v. Cameron, 364 F. 2d 657).
Finally, plaintiffs contend that subdivision 6 of section 70, and section 78, and the regulation (14 NYCRR 62.2) are violative of the First, Fourth, Fifth, Sixth and Fourteenth Amendments insofar as they unreasonably limit a patient’s outside communications. The statute provides (e.g., § 70, subd. 6) that upon admission each patient, ‘ ‘ shall be given the opportunity to communicate once by telephone, or if not possible, by the next most expeditious method, with any person within the state.”
However, section 15 of the ■ Mental Hygiene Law mandates that all patients, “ shall be allowed to correspond without restriction with any public official and with the- mental health information service.”
Defendants contend that there are sound medical reasons for limiting patients’ communications to “any person” of the patients’ choosing. Whatever the merits of this medical judg *174 ment in each individual case, the limitation does not appear, on its face, to be constitutionally improper in view of protection afforded patients by section 15 of the Mental Hygiene Law.
Both sides present statistical evidence and expert opinions on the efficacy of existing and proposed alternative statutory schemes. While interesting and illuminating, this conflicting evidence is somewhat beside the point and does not raise any factual issues which preclude summary disposition of the matter. Both sides also factually contest the need for, and appropriateness of, plaintiffs ’ prior commitments. However, in view of the basis for .standing herein (i.e., plaintiffs’ fear of prospective application of the law), their individual prior experiences are of little relevance to the legal questions presented. It is to be noted that each side, by moving for summary judgment, concedes that there are no factual issues which preclude summary relief. The court concurs in this concession.
Accordingly, based upon all of the foregoing, the plaintiffs’ motion for summary judgment is denied and defendants’ cross motion is granted.