Nanette Dembitz, J.
The primary procedural issue raised by respondent in this proceeding is whether the Judge should have granted the motion made at its inception that she disqualify and recuse herself from conducting it. The respondent in the instant parental neglect proceeding under the Family Court Act is a 13-year-old mother; the basis for her motion for recusation was that the Judge had acquired an impression of the facts during a proceeding against respondent’s mother (the grandmother of the child involved in the instant case), and because of such impression had directed the filing of the instant neglect petition against respondent.
Respondent’s attorney concedes the validity of subdivision (e) of section 1032 of the Family Court Act authorizing a Judge to direct the filing of a neglect petition, but contends that the petition against respondént should have been referred to some other Judge for hearing. Respondent’s contention raises an issue of significance to the basic organization of the Family Court and indeed of all courts of original jurisdiction. For, acceptance of respondent’s argument would jeopardize the general movement in court reform for the assignment of one Judge to conduct all phases of a case, summarized in the slogan “ one case, one Judge ” — a reform which has resulted in frequent motions for disqualification in this and other courts.[1] On the basis of fundamental principles as to judicial disqualification, this court reaffirms its refusal to disqualify itself and denies respondent’s present motion, after trial, to dismiss the petition because of such refusal.
I. Grounds for Disqualification of a Judge
The customary ground for disqualification of a Judge is personal bias in the sense of a possible interest in the outcome of a case as a private individual rather than as a Judge. New *1036 York statutes providing for the disqualification of Judges, are only concerned with the Judge’s connection with a case as a party or prior counsel, or by virtue of consanguinity or financial interest (Judiciary Law, § 14; see, also, SOPA 2604). Prior knowledge of the issues or the parties acquired as a Judge, or even prior ruling on the very issues, is no ground for disqualification. New York law in this respect reflects universal principles.
Dismissing as “ frivolous ” an allegation that the Trial Judge should have disqualified himself, a United States Court of Appeals asserted the basic principle that disqualification is required only on evidence of ‘ ‘ personal bias, which means an attitude of extrajudicial origin. A mere showing of prior judicial exposure to the present parties or questions ’ ’ is not a ground for disqualification. (Barry v. Sigler, 373 P. 2d 835, 836 [C. A. 8th, 1967] citing numerous cases.) See, also, Wilkes v. United States (80 P. 2d 285, 289 [C. A. 9th, 1935]), in which the Judge who had ruled against the defendant in a civil action was held qualified to try a criminal prosecution against him based on some of the same acts.
This principle was applied in People v. Horton (18 N Y 2d 355, cert. den. 387 U. S. 934). There, after defendant’s conviction the case had been remitted to the trial court for a Huntley hearing as to the voluntariness of defendant’s confession. The Court of Appeals unanimously rejected the contention that the Judge who had conducted the trial and sentenced the defendant should have disqualified himself from holding the Huntley hearing. The appellate court deemed the Trial Judge qualified to fulfill the Huntley obligation of determining the voluntariness of defendant’s confession without any consideration of defendant’s guilt, although the Judge had heard all the evidence of his guilt and had indeed sentenced him. With regard to the fact that the Trial Judge had, between the time of conviction and the Huntley hearing heard “ unsworn 1 testimony ’ ” in the form of remarks by police officers as to the voluntariness of the confession, the Court of Appeals pointed out that in the subsequent hearing ‘ ‘ the accuracy of these remarks was sworn to ” (18 N Y 2d at pp. 361-362). Thus, every phase of the Horton opinion reflects the basic premise of the judicial system: that a Judge has the competence and intellectual integrity to evaluate the evidence presented on the issues before him in accordance with the applicable rules, regardless of preceding judicial contact with the issues or parties, and that he will disregard or appropriately discount *1037 any hearsay or ex parte statements. (See, also, Weiner v. Savarese, 109 N. Y. S. 2d 14, 16 [Sup. Ct., Queens County, 1951], app. dsmd. 112 N. Y. S. 2d 772.)
This fundamental principle is likewise expressed in People v. Brown (24 N Y 2d 168, 170). There the defendant contended that he was entitled to a preliminary hearing as to the voluntariness of his confession when he was tried by a Judge, for the same reasons as he was entitled to such a preliminary hearing when he was tried by a jury. The Court of Appeals unanimously rejected that contention, stating (p. 172): “ It seems to us, however, that a Judge — unlike a jury — by reasons of his learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of makng an objective determination as to voluntariness, regardless of whether he has heard evidence on other issues in the case.”[2] And the court pointed out that in nonjury civil cases the Trial Judge often inspects a document1 ‘ dispositive of the issue of liability ’ ’; if he finds it inadmissible, he is nevertheless deemed qualified to “ rule on the issue of liability without taking into consideration the evidence which he [examined and] excluded.” (p. 173). Certainly in the instant civil proceeding a Judge must be deemed equally qualified to render a determination on the basis of the evidence presented at the trial on the instant petition, and to abjure any other impression of the facts. Even a juror, who is considered far less able than a Judge to properly evaluate evidence, may be held “ 1 capable of rendering an impartial verdict and of deciding the case solely upon the proof received during the trial, ’ ” despite the fact that he has “ discovered facts which would not have been admissible as evidence.” (People v. Rivera, 26 N Y 2d 304, 307-308.)
The respondent’s motion, then, is contrary to basic principles as to disqualification.

Direct Precedents for Judge’s Trial of Petition against Respondent

It is true that in ordinary civil or criminal proceedings there is no occasion for a Judge to direct the filing of a petition, and thus no occasion for the precise situation to which respondent’s *1038 motion for disqualification was addressed. However, a similar issue of disqualification has arisen in those civil proceedings which, like the instant one, involve public as well as merely private interest. Thus, in Friedman v. State of New York (24 N Y 2d 528, 541-542) the Court of Appeals upheld a determination of the Court on the Judiciary, in the face of ‘ ‘ claimant’s contention that the functions of complainant, prosecutor, and Judge were combined in the Court on the Judiciary in violation of his constitutional rights ”. The Court of Appeals held that the Court on the Judiciary was qualified to try and adjudicate the charges against the claimant although that court had prior to the trial itself made the determination, on the basis of a factual report to it, that the charges should be brought, (p. 544).
Again, proceedings brought before various administrative agencies for the sake of public as well as private interests, offer an analogy to the neglect proceedings in the Family Court, which are grounded in the State’s power and obligation as parens patriae. Routinely, an administrative agency — for example, the Federal Trade Commission — authorizes an investigation by its staff; on the basis of the staff report, it may direct the filing of a petition; it then holds an adversary hearing on such petition and it then adjudicates whether the allegations of the petition are supported. For approval of this procedure, see Federal Trade Comm. v. Cinderella Career and Finishing Schools (404 F. 2d 1308, 1315 [C. A. D. C., 1968]); Holman & Co. v. Securities and Exch. Comm. (366 F. 2d 446, 455 [C. A. 2d, 1966], cert. den. 389 H. S. 991, rehearing den. 389 U. S. 1060.)

Fairness of Procedure

In the instant case, on all occasions that testimony was taken relevant to respondent in the prior neglect proceeding against respondent’s mother, respondent was represented by counsel — indeed the same counsel representing her in the instant proceeding. More important, while some questions in the hearing on the instant petition were grounded on such prior testimony, all of the findings herein are based on the testimony and documentary evidence admitted at the instant hearing. This court has considered only those representations tested by the adversary process in the instant proceeding against respondent (cf. procedure in Horton, discussed above). Only if the Judge failed to consider respondent’s evidence in *1039 defense (cf. Frischling v. Schrank, 24 A D 2d 462, 463 [2d Dept., 1965]; Sherk v. Catena, 235 App. Div. 2d 686 [2d Dept., 1932]) would respondent suffer a violation of due process. Such a judicial dereliction of duty cannot, however, be assumed, in view of the principles discussed above as to disqualification. Respondent’s failure to overcome the petitioner’s evidence against her in this proceeding merely shows the correctness of the Judge’s preliminary impression of facts — it does not show judicial prejudgment of the case or a closed judicial mind.

Policy Considerations Supporting Judge’s Refusal to Disqualify Herself

Respondent’s contention would require the abrogation of the recent major reform in trial court procedure of assigning one Judge to a case from its beginning to end. A major purpose of the reform is to maximize the Judge’s knowledge of a case through his continuing contact with it — the very factor to which respondent objects in the instant case. Under the one-Judge reform, a Judge will necessarily make a preliminary appraisal of the facts and the parties prior to the plenary trial, through his setting or revoking bail, authorizing process, hearing ex parte applications for restraining orders or pretrial motions — a variety of preliminary matters depending on the type of case. And in neglect proceedings in this court, he preliminarily weighs the facts whenever he authorizes, prior to the plenary fact-finding hearing, a warrant for the parent or an emergency removal of the child. Respondent’s opposition to the one-Judge practice is particularly undesirable for Family Court neglect proceedings, because there a lack of sufficient co-ordination of knowledge — a Judge’s inability to muster all available information about a neglectful mother — had been the subject of special study and criticism.[3]
The instant case well illustrates the specific and practical disservice to the purposes of the Family Court Act that would result from acceptance of respondent’s contention. When evidence was adduced in the neglect proceeding against respondent’s mother that caused the Judge to direct the instant petition against respondent, no attorneys were present except those representing respondent’s mother and respondent (there acting as her Law Guardian), nor was anyone present repre *1040 seating or concerned with the interests of Diana A., respondent’s child. Accordingly, if the Judge had disqualified herself, no one in the present neglect proceeding, brought for the welfare of Diana, could have propounded questions suggested by the testimony in the prior proceeding. The interests that would suffer by acceptance of respondent’s contention are those of the third party, the child, for whose welfare the instant proceeding is brought, and the public interest in child welfare.
Accordingly, the denial of respondent’s motion for disqualification is supported by principle, precedent, and policy.
II. Objection to Testimony by Representative of Society for Prevention of Cruelty to Children
A major portion of the evidence against respondent was the testimony of the representative of the Society for the Prevention of Cruelty to Children as to his interview with her. Respondent’s attorney objected to its admission on the basis that the representative had failed to warn her that her statements might be used against her in this proceeding. To require such a warning would frustrate the State’s performance of its duty as parens patriae to investigate and protect the welfare of children. In any event, there appears to be no precedent for the requirement of a warning in connection with a civil proceeding. Indeed, it appears that the S.P.C.C. testimony would, under the circumstances of the interview, be admissible despite the lack of warning even if the instant proceeding were a criminal prosecution. (Compare United States v. Caiello 420 F. 2d 471 [0. A. 2d, 1969], cert. den. 397 U. S. 1039.)
Respondent’s motion, after trial, to dismiss the petition is therefore denied.

. See Legal Aid Citations (Yol. Ill, No. 1, Jan.-Feb. 1971, published by Legal Aid Society of New York), p. 6 as to frequency of such motions in the Civil Court of New York City.

. See, also, People v. Sykes (22 N Y 2d 159, 165) where the court remitted the case “for further findings on the issues of voluntariness and the underlying acts”, and for a further hearing if necessary, to the same Trial Judge who had already, sitting without a jury, convicted and sentenced defendant.
Compare Bridges v. California (314 U. S. 252, 273) discussing the hardihood expected of a Judge in the face of pressure, because of his training and sense of responsibility.

. See report of Judiciary Relations Committee appointed by Appellate Division, First Department, New York Law Journal for June 25, 1969, p. 1, col. 3.