Irwin Brownstein, J.
This is a habeas corpus proceeding brought on behalf of a juvenile, 15 years old, who is being detained pursuant to an order of the Family Court pending trial. A petition based upon information and belief was filed in the Family Court on October 8, 1974, accusing the relator of acts which, if committed by an adult, would constitute murder in the second degree, manslaughter in the first degree, assault in the first degree, reckless endangerment in the first degree, criminal posssesion of stolen property in the third degree, and menacing in the first degree. On October 11 a probable cause hearing was held at which a determination was made that there was probable cause to believe that such acts were committed and that the relator committed them. The Family Court also entered a finding that good cause existed to adjourn the fact-finding hearing beyond 72 hours. (See Family Ct. Act, § 748, subd. [a].)
After this hearing the relator was ordered remanded to Juvenile Center, without bail, pending his trial until November 6. Thereafter the instant writ was issued. The relator does not herein challenge the basis for the finding of probable cause. Bather, the challenge is to the -vadidity of the remand order.
This case squarely raises the issue of whether preventive detention may validly be imposed in the Family Court for juveniles who are accused of being juvenile delinquents. It is of first impression in this State.
*732 In order for a juvenile to be held in custody, a basis for the remand must be found in section 739 of the Family Court Act which provides that:
“.the court shall not direct detention unless it finds that unless the respondent is detained:
“ (a) there is a substantial probability that he will not appear in court on the return date; or 1
“ (b) there is a serious risk that be may before the return date do an act which if committed by an adult would constitute a crime.”
The Family Court Judge specifically held the relator pursuant to subdivision (b) of section 739 of the Family Court Act and said: “ The reason for the remand is not my fear that they [relator and another juvenile accused with him] would not attend; I thought that I had made that quite clear. If there is any question about it, I am not afraid .that they will not attend on the appointed date; the charge is so serious, the crime is of such a nature that the Court is indeed concerned that were these respondents paroled, that * * * there is likelihood that they might commit another crime ”. (Transcript, Family Court hearing.)
' Relator urges that the remand order and subdivision (b) of section 739 of the Family Court Act are unconstitutional. The constituitonal challenge to the statute can be briefly summarized. In the first instance, it is urged that preventive detention for juveniles in New York is violative of equal protection of the law in that there is no compelling State interest or, alternatively, no rational basis for prohibiting preventive detention for adults while allowing it for juveniles. Secondly, the relator contends .that the scheme violates due process of law in that there is no quid pro quo for the deprivation of liberty which the juvenile suffers.
Equal protection of the law requires that a State must not classify its citizens and treat persons differently unless there is a rational basis for so doing (Morey v. Doud, 354 U. S. 457; United States v. Caroline Prods. Co., 304 U. S. 144).
If a suspect classification or fundamental right is involved courts accord the legislation strict scrutiny and require a compelling State interest before upholding the law (In re Griffiths, 413 U. S. 717; Roe v. Wade, 410 U. S. 113).
The challenge to this statute flows primarily out of the fact that preventive detention is not permitted for adults. (CPL 510.30.) In the adult criminal system the likelihood of committing another crime is not one of the criteria which may be con *733 sidered in setting bail for a defendant (People ex rel. Schweizer v. Welch, 40 A D 2d 621).
It is clear that our Constitution requires courts to look behind labels in determining the validity of a challenged scheme. Our task is to look at the actual effect which the scheme has on the person.
The effect of permitting pretrial detention of juveniles is that they are incarcerated and deprived of their liberty. The effect is identical on juveniles and adults. As Mr. Justice Black has written: ‘ ‘ Imprisonment awaiting determination of whether that imprisonment is justifiable has precisely the same evil consequences .to an individual whatever legalistic label is used to describe his plight.” (Carlson v. Landon, 342 U. S. 524, 557 [dissent]; see, also, People ex rel. Guggenheim v. Mucci, 77 Misc 2d 41, 44, affd. 46 AD 2d 683.)
The right at issue in this case is the most fundamental of all our rights — the right to liberty. The Fourteenth Amendment to the United States Constitution mandates that “No State shall * * # deprive any person of life, liberty or property, without due process of law ’ ’. Liberty embraces many of the rights which the Supreme Court has held to be fundamental: travel (Dunn v. Blumstein, 405 U. S. 330; Shapiro v. Thompson, 394 U. S. 618); association (N. A. A. C. P. v. Alabama, 357 U. S. 449; Papachristou v. City of Jacksonville, 405 U. S. 156).
Since the right which lay at the heart of the challenged legislation is “ fundamental ”, if the scheme is to be upheld the State must show a compelling State interest to justify treating juveniles differently from adults.
Not only is the effect of preventive detention identical for juveniles and adults, but the purpose of it is the same. The purpose is .the protection of society. There cambe no compelling State interest in prohibiting preventive detention for adults while allowing it for juveniles. Subdivision (b) of section 739 must be declared unconstitutional.
Even under the traditional standard of equal protection analysis, this scheme must fall. As has already been stated, the purpose behind preventive detention is always the same — to protect society. If the classification is not rationally related to the purpose of the law, it offends our Constitution. It is irrational to conclude that persons under the age of 16 — who are found to have a propensity .to commit crime — need to be kept from society while persons over 16 who are found to have an equal (or greater) propensity to commit crime may not, by virtue of that fact alone, be confined. Preventive detention is irra *734 tional when applied if it is imposed because of age and not the danger to society.
It matters not that rehabilitation lay at the heart of the juvenile court system. Such a goal comes into play only after a finding of guilt has been entered. Equal protection has been applied to juvenile proceedings whenever the court has found no valid ground for denying to juveniles that which adults are guaranteed (Matter of Steven B., 30 A D 2d 442; Matter of Arthur M., 34 A D 2d 761).
A factor always to be reckoned with in scrutinizing the validity of aspects of the juvenile justice system is the effect on the system which a change would make. Courts are generally reluctant to interfere too greatly with the administration of the juvenile court proceedings (McKeiver v. Pennsylvamia, 403 U. S. 528). It should be noted that the ruling in this case does not pose any burden on the Family Court. In this respect it is akin to In re Winship (397 U. S. 358), which held that juveniles are entitled to have proof against them beyond a reasonable doubt before a court may enter a finding of guilt.
It is now the rule in New York that “ fairness requires that no distinction be made between adults and juveniles in evidentiary matters. ” (Matter of Robert P., 40 A D 2d 638, 639.) This case stands for the proposition that the standard for holding a child accused of an act which constitutes a crime before his trial may be no different from the standard used to hold an adult. This imposes no infringement on the court process itself. The only justification for holding an accused before trial in New York is that there is a “ substantial probability ” that the accused will not return to court.
This court is not unmindful of the judicial or political climate in which we live. Persons accused of serious crime, as the relator herein, concern all thinking citizens. But the cost of that concern may not be a transgressing of constitutional guarantees.
This court agrees with the view set forth by Chief Judge Bbeitel that: “ It would take a distorted view to believe that adult felony criminal proceedings were designed to be more tender of .the rights of detained adults than the Family Court proceedings are of juveniles.” (People ex rel. Guggenheim v. Mucci, 32 N Y 2d 307, 313.)
Preventive detention was proposed in the 1969 proposed CPL. The Legislature debated the issue and decided against allowing preventive detention for adults. It is very likely that it was a *735 mere oversight which kept subdivision (b) of section 739 in the Family Court Act.
Because of the ruling of this court, it is not necessary to consider the relator’s due process contention. The within writ is sustained and the relator is released from custody on his own recognizance and ordered to appear in the Family Court for his trial.