Nanette Dembitz, J.
In this juvenile delinquency proceeding the petition alleges that the 15-year-old respondent committed acts that would constitute, if committed by an adult, first degree rape in violation of section 130.35 of the Penal Law. The novel question of law herein is the proper application of the recently-enacted statute, effective September 1, 1975, as to pretrial detention of juveniles charged with serious delinquencies. (L 1975, ch 837.)
1. BACKGROUND OF 1975 AMENDMENTS ON PRETRIAL DETENTION
The 1975 amendments to the Family Court Act must be interpreted in the light of their history. Prior to the amendments no juvenile could be detained for more than three days between the filing of a delinquency petition against him and the commencement of his trial, except in two types of. cases: on allegations of “a homicide or an assault by the respondent on a person incapacitated from attending court as a result thereof,” he could be detained pending trial “for a reasonable length of time.” (Family Ct Act, §§ 747, 748, as amd by L 1965, ch 284.)
The additional criteria provided in the Family Court Act for any pretrial detention were and are either “a substantial probability” that the juvenile if released would not appear for trial or “a serious risk” that he would commit another delinquency before trial (§ 739, subd [a], pars [i], [ii], as renumbered by L 1975, ch 837). However, the latter criterion was held unconstitutional as a denial of equal protection of the law in that there is no preventive detention statute for adults charged with crime. (People ex rel. Wayburn v Schupf, 80 Misc 2d 730, mod 47 AD2d 79; see CPL 510.30; People ex rel. Schweizer v Welch, 40 AD2d 621.) And though the short pretrial detention limits for juveniles (supra) appeared to *947 afford more protection against preventive detention than adults in fact secure under bail-fixing practices in the criminal courts, the Supreme Court’s Wayburn decision on the written law appears valid. Thus, the preventive detention provision of the Family Court Act appears to be unconstitutional despite its re-enactment in 1975.
Focusing, then, on the valid detention criterion of a probability of the respondent’s nonappearance for trial, the three-day pretrial detention limitation with its narrow exceptions often forced the court because of practical considerations to release juveniles even though they were charged with serious criminality and even though they were unlikely to appear for trial. The problem of the nonappearance of juveniles after pretrial release was complicated by People ex rel. Wayburn v Schupf (47 AD2d 79); there the court held, on the basis of inference from certain tangential provisions of the Family Court Act, that the Family Court has no power to fix bail for a juvenile. (It is respectfully suggested that the appellate court erred; it overlooked subdivision (e) of section 738 of the Family Court Act which refers to a juvenile "respondent on bail” and thus makes clear that the court’s power under section 153 to fix bail for "an adult respondent or child” is intended literally.[1]
2. THE 1975 AMENDMENTS ON PRETRIAL DETENTION TIME LIMITS
Against this background of difficulty under the provision for a juvenile’s trial within three days or release from custody, the 1975 amendments permit a detention in cases of alleged acts constituting any Class A, B, or C felony for 14 days prior to commencement of trial, if the court finds probable cause to believe the delinquency has been committed. The provision for trial within "a reasonable length of time” should be construed to continue for the special categories of class A, B, or C felonies consisting of "a homicide or an assault by the respondent on a person incapacitated from attending court as a *948 result thereof’ (Family Ct Act, § 748, subd [a], par [i], as amd by L 1965, ch 284).
In the probable cause hearing required under the 1975 amendments for a 14-day detention, "the evidentiary standards applicable to a hearing on a felony complaint in a criminal court” govern (Family Ct Act, § 739, subd [b], par [ij, as amd by L 1975, ch 837). And the amendment apparently intends — although it is less than crystal-clear — that the probable cause hearing must be held within three days after the filing of the petition, although that period may be extended another three days under "special circumstances”. That construction of the amendment is supported by the suggestion in People ex rel. Guggenheim v Mucci (32 NY2d 307, 312) (construing the homicide-assault provision), and by analogy to the CPL 180.80; it appears both from statements of the legislative draftsmen and the amending act as a whole that the CPL served as a model.[2]
3. "probable cause” and "good cause”
Petitioner moving for respondent’s pretrial detention for 14 days on the basis of alleged acts constituting a Class A felony, a probable cause hearing was conducted within the period permitted under the above-discussed construction of the 1975 amendments. Probable cause to believe in respondent’s guilt was established, as the amendments prescribe, under the standards controlling a criminal court preliminary hearing on a felony complaint, — that is, under CPL 180.80.
In addition to such probable cause, a showing of good cause for detention beyond three days is necessary, in this court’s opinion, although the statute does not provide for it. This requirement is suggested by Guggenheim (32 NY2d 307, at p 313), and is essential to the statute’s constitutionality. For, absent good cause for petitioner’s delay in commencing trial, respondent would suffer an arbitrary deprivation of liberty, in violation of the due process guarantee and a denial of equal protection as compared to other respondents. (Cf. Rinaldi v Yeager, 384 US 305, 308.) Here good cause for postponement of the trial was shown, in that the Corporation Counsel had *949 been unable, despite timely and diligent efforts, to comply with respondent’s request, for trial, for the minutes of petitioner’s testimony. (Cf. People ex rel. Fox v Sherwood, 73 Misc 2d 101, regarding "good cause.”)
4. USE OF TESTIMONY ELICITED AT PROBABLE CAUSE HEARING
This court directs that the testimony of petitioner (the victim of the alleged rape) at the probable cause hearing, which lasted over two hours and was the only testimony therein offered, is to be deemed her testimony for the purpose of the fact-finding hearing (the trial on the merits), with an opportunity for her additional direct testimony and for respondent’s attorney to cross-examine her die novo. Respondent contends that this procedure is improper, despite the Court of Appeals’ suggestion in Guggenheim that the fact-finding and probable cause hearings could be combined (32 NY2d 307, at p 313); that court in effect stated that respondent has no right to a repetition of the testimony of petitioner’s witnesses. The 1975 amendments to sections 739 and 747 in no way change the pattern or purpose of hearings conducted under the section in issue in Guggenheim. Further, respondent is in no way prejudiced by the procedure here employed.
Although hearsay is generally admissible to establish probable cause (see CPL 70.10, subd 2; Costello v United States, 350 US 359), it is inadmissible in a preliminary felony hearing. CPL 180.60 (subd 8) provides that "only non-hearsay evidence is admissible” in such a hearing, except for reports of certain experts. (See People v Bonilla, 74 Misc 2d 971.) No such reports being here involved, the rules of evidence applicable in a fact-finding governed in the probable cause hearing. Only on the question of the reason for delay — the unavailability of the Grand Jury minutes — was hearsay allowed; such admissible hearsay (see Guggenheim, 32 NY2d 307, at p 313) is of course irrelevant in the fact-finding.
Nor does the procedure herein prescribed violate the constitutional guarantees of due process or equal protection, which protect defendants if preliminary hearings are statutorily provided. (Coleman v Alabama, 399 US 1, 7-9; see Gerstein v Pugh, 420 US 103.) For, the instant procedure does not deprive respondent of the benefit gained from a preliminary hearing as a pretrial discovery device. (See Blue v United States, 342 F2d 894, 901, cert den 380 US 944.) In view of petitioner’s direct and cross-examination at the probable cause *950 hearing and her cross-examination de novo at the fact-finding hearing, respondent had the advantage of advance knowledge of the testimony against him and an opportunity to fashion an "impeachment tool for use in cross-examination” of petitioner at the second hearing. (See Coleman, 399 US, at p 9.)
The only disadvantage to respondent of the procedure herein used is that he is unable to capitalize on a possible failure of memory on the part of petitioner victim between the first and second day of hearing or an inconsistency in her testimony if she is subjected to direct examination for the third time. But surely such strategic advantages for a defendant or respondent do not advance the basic truth-finding purpose of a trial. Further, to insure a benefit for respondents on the fortuitous basis of whether petitioner’s unreadiness for trial necessitates a probable cause hearing (here due to the unavailability of Grand Jury minutes), would work a denial of equal protection of the law; there would be no "semblance of rationality” and a "capriciousness of the classification” in the designation of respondents securing such benefit. (See Baxstrom v Herold, 383 US 107, 115; also Williams v Illinois, 399 US 235, 242.)
A constitutional problem might be presented by the procedure herein, if a respondent exercises his right to testify at the probable cause hearing (see CPL 180.80 as to this right). He should in that circumstance nevertheless have the right to refrain from testifying at the trial on the merits, nor should his prior testimony nor even the fact that he testified be considered. (See People v Burd, 18 NY2d 447, 450; cf. Simmons v United States, 390 US 377, 393-394, 398.) If the rule were followed, — with which this court respectfully disagrees,— that tainted evidence, constitutionally excludible at trial, is admissible at a probable cause hearing (see People ex rel. Pierce v Thomas, 70 Misc 2d 629, 630-631), the instant procedure of combining the probable cause and the fact-finding hearings could nevertheless be used, with the excludible evidence ignored for fact-finding purposes. (Consider People v Brown, 24 NY2d 168, 170, 172-173.)
The suggestion that the Judge who found probable cause should be disqualified from conducting the fact-finding hearing, is without merit. As the United States Supreme Court recently declared: "Judges repeatedly issue arrest warrants on the basis that there is probable cause * * * Judges also preside at preliminary hearings where they must decide *951 whether the evidence is sufficient to hold a defendant for trial. Neither of these pretrial involvements has been thought to raise any constitutional barrier against the judge’s presiding over the criminal trial and, if the trial is without a jury, against making the necessary determination of guilt or innocence.” (Withrow v Larkin, 421 US 35, 56.)[3]
To the extent possible without any sacrifice of fair procedure, the time of the court and court-connected agencies must be conserved to expedite the administration of justice for all litigants. (See Matter of Kevin G, 80 Misc 2d 517, 524; cf. People ex rel. Franklin v Warden, 31 NY2d 498, 503.) The procedure herein followed was adopted for that purpose.

. The court also ignored the equal protection problem presented by its no-bail holding, which is similar to that held by the lower court to invalidate preventive detention for juveniles. (See CPL arts 510, 530.) The economic realities of bail for juveniles are similar to those for adults; while it is true that the parents’ rather than the accused’s financial circumstances determine the proper amount of bail in a juvenile case, in rare instances bail is appropriate to pressure the parent, if not the juvenile, to insure his appearance for trial.

. For the latter reason, amended section 739 (subd [b], par [ii]), permitting an extension of a three-day detention for an "additional 3 days” under "special circumstances,” should be construed as a modification for all cases of the absolute three-day limit continued by the first sentence of section 747 (cf. CPL 180.80). This construction is also supported by the principle of the dominance of subsequent enactments.

. Cf. People ex rel. Feldman v Warden (36 NY2d 846) the same Judge issued an order, directed the relator’s incarceration for contempt for a failure to obey it, denied her petition for habeas corpus for her release, and — if he wished — could adjudicate her further applications for release. (See Matter of Diana A., 65 Misc 2d 1034, 1035-1038.)