Fuchsberg, J. (concurring in result).
I do not take issue with the fact that there are aspects of the criminal justice system in relation to which children may be, and are presently, treated differently from adults without any violation of equal protection principles. But the statute before us, I respectfully suggest, violates by its broad sanction of preventive detention basic due process standards applicable to both children and adults (Matter of Winship, 397 US 358; Matter of Gault, 387 US 1). Though the statute specifies that a child may be detained upon a finding that there is a "serious risk” that he may commit an act which would be a crime for an adult before the charges which brought him into court can be adjudicated, it offers no indication whatsoever as to what criteria are to be used in determining when a child poses such a risk.
The absence of such criteria is no accident. As commentators have pointed out and reputable studies have shown, we presently possess no legal or sociological crystal ball with which to make accurate predictions of future crimes (see Note, Preventive Detention: An Empirical Analysis, 6 Harv Civ Rights Civ Lib L Rev 289; Hearings on Preventive Detention Before the Subcommittee on Constitutional Rights of the Senate Committee on the Judiciary, 91st Cong 2d Session [1970]; Family Court Act Legislative Report, McKinney’s Ses *692 sion Laws of NY, 1962, p 3428; Judicial Conference of the State of New York, 19th Annual Report, p 341; Tribe, An Ounce of Detention: Preventive Justice in the World of John Mitchell, 56 Va L Rev 371; President’s Commission on Law Enforcement and Administration of Justice, Task Force Report: Juvenile Delinquency and Youth Crime [1967], p 37).
The result, as indeed these studies demonstrate, is that a great many juveniles are detained only to be released when their cases are finally adjudicated, thereby demonstrating that they were never in need of detention, while other juveniles somehow slip through the net of detention and then commit further crimes (see, particularly, Judicial Conference of the State of New York, 19th Annual Report, p 341). Choices among juveniles as to who is a risk and who is not are thus essentially random and inexplicable in terms of any articulated and validated behavorial criteria. Such a procedure is inherently arbitrary and violative of due process (see Rinaldi v Yeager, 384 US 305; Carrington v Rash, 380 US 89; Papachristou v City of Jacksonville, 405 US 156).
It is no answer to suggest that, apart from its purpose to protect society, otherwise arbitrary detention may be allowed because it has a protective or rehabilitative use for the child himself. The language of the statute makes no mention of a purpose to protect the child, and the Judge who applies it need not articulate any such rationale, as the majority correctly notes (opn, p 687; compare California Welfare and Institutions Code, § 6305; see Matter of William M., 3 Cal 3d 16, 26, n 17). Moreover, while the Legislature may have chosen overbroad terms in which to express its desire to protect society, the history of the statute makes very clear that it was not intended to be used for the protection of children themselves. That history indicates a profound legislative concern that detention is bad for children, not good for them, and displays an intent to curb the de facto practice of unnecessarily detaining children who are not threats to society, rather than an intent to broaden that practice (Family Court Act Legislative Report, McKinney’s Session Laws of NY, 1962, pp 3428, 3438). And, as the United States Supreme Court has recently pointed out in a juvenile context: "Nor does the fact 'that the purpose of the commitment is rehabilitative and not punitive * * * change its nature * * * Regardless of the purposes for which the incarceration is imposed, the fact remains that it is incarceration. The rehabilitative *693 goals of the system are admirable, but they do not change the drastic nature of the action taken.’ * * * Fain v. Duff, 488 F. 2d, at 225.” (Breed v Jones, 421 US 519, 530, n 12; see, also, the opn of Mr. Justice Brownstein at nisi prius, 80 Misc 2d 730, 733.)
The fact that the period of detention in most cases may be relatively short does not suffice to remove the objection that there should have been no detention at all. Section 747 of the Family Court Act permits detention of a juvenile for three days without a hearing. When the juvenile is accused of acts which, if performed by an adult, would be classified as A, B, or C felonies, longer detention is authorized before adjudication must take place and at least one adjournment may be had (Family Ct Act, § 748). It is true that this court’s opinion in People ex rel. Guggenheim v Mucci (32 NY2d 307) read into these statutes a requirement that, if detention is to last beyond three days, a probable cause hearing must be held. Detention, however, may be continued if, after a showing of probable, cause to believe that the juvenile did commit the act of which he is accused, the court feels that he is a "serious risk”. That is precisely what happened in the case before us. The Guggenheim decision, while laudable, thus provides no solution to the dilemma of how to predict which children present such risks and which ones do not.
It should be noted that the due process strictures on detention of accused persons, adult or juvenile, prior to adjudication are not a bar to proper dispositions in cases where genuine evidence of risk, capable of objective ascertainment, is presented. Thus, our courts have long had the power to consider whether mental or emotional illness of a degree sufficient to make future crimes probable is suggested by all of the circumstances and to obtain the needed medical and psychiatric data on which to base a disposition (see A Program for Prison Reform Final Report, Annual Chief Justice Earl Warren Conference on Advocacy, June, 1972, p 13; Note, Preventive Detention Before Trial, 79 Harv L Rev 1489, 1504; cf. Fhagen v Miller, 29 NY2d 348, cert den 409 US 845; Matter of James, 22 NY2d 545). Detention in such cases does not depend upon the statute in issue here.
It is detention without such objective and demonstrable criteria which is forbidden by constitutional mandates. Since the statute before us (Family Ct Act, § 739, subd [b]) contains no such criteria, it must be held unconstitutional. Of course, I *694 share the majority’s deep concern about the escalating incidence of violent crime, regrettably committed by children as well as adults. But suspension of the right not to be punished before one is found guilty is not a permissible solution, if it is any solution at all.
Accordingly, I would modify the judgment to the extent of dismissing the petition as moot. If it were not moot, I would have voted to affirm.